UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-872 (RDA/TCB) |
| ) | |
| GIBILL.COM, an internet domain name, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION

THIS MATTER is before the undersigned on Plaintiff United States' ("Plaintiff") Motion for Default Judgment (Dkt. 10).[1] For the reasons stated below, the undersigned U.S. Magistrate Judge recommends that the Court grant Plaintiff's motion for default judgment.

### I. BACKGROUND

**A.  Procedural Posture**

Plaintiff filed its Complaint on July 27, 2021 pursuant to the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). (Dkt. 1.) When a representative for Defendant Domain Name <gibill.com> ("Defendant Domain Name") failed to timely appear or otherwise respond in this matter, Plaintiff requested the clerk's entry of default on September 3, 2021, and the Clerk entered Defendants' default on September 14, 2021. (Dkts. 8-9.) Plaintiff filed the instant motion for default judgment on September 15, 2021. (Dkt. 10.) At the hearing on October 8, 2021 before the undersigned, Defendant Domain Name did not appear or respond in

---

[1] The relevant filings before the undersigned include Plaintiff's Complaint ("Compl.") (Dkt. 1); and Plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 10); and all attachments and exhibits submitted with those filings.

1

any way. The undersigned took this matter under advisement to issue this Report and Recommendation

### B.   Jurisdiction and Venue

Before the Court can render default judgment against an Internet domain name pursuant to the ACPA, it must have (1) subject-matter jurisdiction, (2) *in rem* jurisdiction over the domain name, and (3) proper venue.

*First*, the undersigned finds that this Court has federal question subject-matter jurisdiction. Plaintiff brought this cause of action pursuant to the ACPA, a federal trademark statute. (*See* Compl. ¶¶ 4-5.) This Court therefore has original jurisdiction under 28 U.S.C. § 1331 (jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States"), 15 U.S.C. § 1121(a) (jurisdiction over federal trademark actions), and 28 U.S.C. § 1338(a) (jurisdiction over "any Act of Congress relating to . . . trademarks").

*Second*, the undersigned finds that the Court has proper *in rem* jurisdiction over Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A). This subsection allows a plaintiff to file an *in rem* civil action against an Internet domain name if the plaintiff is unable to (1) "obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action"; or (2) find the person who would have been the defendant through due diligence. 15 U.S.C. § 1125(d)(2)(A)(ii)(I)-(II). Here, Plaintiff alleges that despite its due diligence, it was unable to identify a person who would have been a defendant in this matter. (Compl. ¶ 6.) Further, Plaintiff alleges that it was unable to find the identity of the current registrant and owner of Defendant Domain Name because the owner is concealing their identity. (*Id.*) Despite Plaintiff's due diligence—including sending notice of the alleged violation and its intent to proceed *in rem*, as well as publishing notice of this action as directed by the Court—Plaintiff was

still unable to identify the individual. (Dkts. 6, 7.) Therefore, this Court has proper *in rem* jurisdiction over Defendant Domain Name pursuant to the ACPA.

***Third***, Plaintiff filed this lawsuit in the proper venue. Under 15 U.S.C. § 1125(d)(2)(C)(i), a domain name's "situs" is in the judicial district where "the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(C)(i). Here, venue is proper because (1) the registry operator for .COM and .CC domain names, VeriSign, Inc., is located within the Eastern District of Virginia; and (2) Defendant Domain Name are ".COM" and ".CC" domain names. (Compl. ¶ 8; Mot. Default J. at 5.)

### C. Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. Federal Rule of Civil Procedure 4(n)(1) allows a federal court to assert jurisdiction over property if a federal statute authorizes it. Fed. R. Civ. P. 4(n)(1). The Rule further provides that the defendant must be given notice of the lawsuit "as provided in the [federal] statute or by serving a summons under [Rule 4]." *Id.* Under the ACPA, a plaintiff filing an *in rem* action must serve the registrant of the allegedly infringing domain name. 15 U.S.C. § 1125(d)(2)(A)-(B). If a plaintiff is unable to find or obtain *in personam* jurisdiction over the person who would have been the defendant, then the plaintiff can effect service of process by (1) sending notice of the alleged violation and intent to proceed *in rem* to the registrant of the domain name at the postal or e-mail address provided to the registrar; and (2) publishing notice as directed by the court. *Id.* § 1125(D)(2)(A)(ii) (aa)-(bb).

Here, Plaintiff has demonstrated proper service of process under the ACPA. On August 2, 2021, Plaintiff filed a Motion for Order to Publish Notice of Action and accompanying

memorandum. (Dkts. 3, 4.) With that motion, Plaintiff demonstrated its compliance with the first requirement under the statute. Specifically, Plaintiff's counsel attempted to email the current registrants of Defendant Domain Name using the email and postal addresses on file with the registrar of the domain names, notifying the registrant of this lawsuit and its intent to proceed *in rem*, and attaching a copy of the Complaint. (Dkt. 3-1 at ¶ 5, Attachment A.)

The next day, the Court granted Plaintiff's motion and ordered Plaintiff to publish the Order providing notice of this lawsuit to the registrant of Defendant Domain Names in *The Washington Times* or *The Washington Post* once within fourteen (14) days of the Order. (Dkt. 6.) The Order further directed Plaintiff to file a declaration within twenty-one (21) days after entry of the Order describing its compliance. (*Id.*) On August 13, 2021, Plaintiff's counsel, Mr. Grant D. Johnson, filed a notice and supporting documentation pursuant to the Court's August 3, 2021. (Dkt. 7.) The notice demonstrated that Plaintiff complied by publishing the Order in *The Washington Post* on August 12, 2021. (*Id.*)

The undersigned finds that Plaintiff fulfilled the steps under the ACPA and this Court's Order to properly effect service of process.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts.

### A. The GI BILL Mark

Plaintiff, the United States is acting on behalf of the U.S. Department of Veterans Affairs ("VA"). (Compl. ¶ 9.) The VA is a cabinet-level department of the United States government, created by Congress to provide benefits and support to veterans following their service. (Compl.

¶ 12.) One of the VA's veterans' services includes the educational program created under the Servicemen's Readjustment Act of 144, known to the public as the GI Bill. (Compl. ¶ 13.) The VA holds a registered trademark of the characters "GI Bill" to use in connection with educational benefits provided by the VA, which was registered with the United States Patent and Trademark Office ("USPTO") on October 16, 2012. (Compl. ¶ 14, Ex. B.) Further, the VA has used this mark in commerce for over seventy years. (Compl. ¶ 14.)

### B. Unlawful Registration and Use of Defendant Domain Name

Defendant Domain Name is Plaintiff's mark with the .com top-level domain. (Compl. ¶ 20.) Defendant Domain Name's use of the GI Bill trademark was not authorized by Plaintiff, and Defendant Domain Name has no trademark or other intellectual property rights in the mark. (Compl. ¶¶ 21, 22.) Plaintiff alleges that Defendant Domain Name has not offered any bona fide goods or services or made any bona fide noncommercial or fair use under the GI Bill mark. (Compl. ¶ 23-24.) As such, Plaintiff alleges that Defendant Domain Name intends to divert customers and to create confusion harming the good will of the VA's websites, which could either commercially benefit Defendant Domain Name or tarnish and disparage the GI Bill mark (Compl. ¶ 25.) Plaintiff further alleges that Defendant Domain Name has provided false contact information which is being used in a material and misleading fashion to conceal the true owner of Defendant Domain Name. (Compl. ¶ 26.) And finally, Defendant Domain name has demonstrated a pattern of providing false contact information in the registration and maintained of Defendant Domain Name. (Compl. ¶ 27.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Here, as discussed more below, Plaintiff seeks the transfer of Defendant Domain Name under the ACPA (Count I).

**A.    Legal Standard**

Generally, the ACPA provides for a party to be liable to a trademark owner if that party has a bad-faith intent to profit from the owner's mark and registers, traffics in, or uses a domain name that is identical, confusingly similar to, or dilutive of that mark. 15 U.S.C. § 1125(d)(1)(A); *see also Cent. Source LLC v. annualcreditreport.com*, No. 1:14-cv-304, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014) (citing *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)). Accordingly, the ACPA allows the owner of a mark to bring an *in rem* proceeding against a domain name if it violates the owner's trademark rights and if the owner satisfies the various procedural provisions discussed above. *See* 15 U.S.C. § 1125(d)(2)(A). In an *in rem* action, the remedies are limited to forfeiture, cancellation, or

transfer of the infringing domain name to the owner of the mark. *Id.* § 1125(d)(2)(D).

To be entitled to relief, the plaintiff must prove a violation of "any right of the owner of a mark," which encompasses rights against cybersquatting. *Id.* § 1125(d)(2)(A); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 228, 232 (4th Cir. 2002). The owner of a mark may therefore be entitled to *in rem* relief upon proving a violation of § 1125(d)(1), which creates civil liability for registering, trafficking in, or using a domain name that is "identical or confusingly similar" to a plaintiff's famous and/or distinctive mark, with a bad-faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). In sum, to establish such an ACPA violation, a plaintiff must establish: (1) its ownership of a valid and protectable mark; (2) the registrant's use of a domain name that is "identical or confusingly similar" to the plaintiff's mark; and (3) the registrant's bad-faith intent to profit from the mark. *See id.*

1. Plaintiff Possesses a Valid and Protectable Mark.

Plaintiff must first demonstrate that it has protectable rights in the GI Bill mark. Here, the undersigned finds that Plaintiff has a protectable mark under common law and because the mark is registered with the USPTO.

First, at common law, trademark ownership can be acquired "by actual use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). Here, as established above, Plaintiff has used the GI Bill mark exclusively and continuously in U.S. commerce for over seventy (70) years in association with providing its educational benefits. (*See* Compl. ¶ 12-14; Mot. Default J. at 7-8.) Accordingly, the undersigned finds that Plaintiff is entitled to common law trademark rights in the GI Bill mark.

Second, the ACPA protects Plaintiff's mark because it is registered with the USPTO. The ACPA protects federally registered marks, and registration serves as *prima facie* evidence that a

7

mark has acquired distinctiveness. *See* 15 U.S.C. § 1125(d)(2)(A)(i); *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Here, because Plaintiff has registered the GI Bill mark with the USPTO, there is unrebutted *prima facie* evidence that the mark has at least acquired distinctiveness. (Compl. ¶ 14, Ex. 1; Mot. Default J. at 7-8, Ex. 3.)

Finally, for protection under the ACPA, a plaintiff's mark must be distinctive and/or famous at the time of the defendant domain name's registration. 15 U.S.C. § 1125(d)(1)(A)(ii)(I)-(II). Here, Plaintiff pleads that the GI Bill mark (1) is currently distinctive and famous and (2) was distinctive and famous at the time of the unauthorized registration of Defendant Domain Name. (Compl. ¶ 29; Mot. Default J. 7-8.)

For these reasons, the undersigned finds that Plaintiff possesses a valid and protectable mark.

    2.    <u>Defendant Domain Name Is Confusingly Similar to Plaintiff's Mark.</u>

Under the ACPA, Plaintiff must show that Defendant Domain Name are either identical to, confusingly similar to, or dilutive of a distinctive mark owned by Plaintiff. 15 U.S.C. § 1125(d)(1)(A); *see Doughney*, 263 F.3d at 367. If Defendant Domain Name and Plaintiff's mark are virtually identical, then they are "confusingly similar" under the ACPA. *See Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 664 (E.D. Va. 2006); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995) ("[I]n evaluating the similarity of two marks ... the marks need only be sufficiently similar in appearance." (citation omitted)). Logically, this "confusingly similar" standard is satisfied when a domain name is identical to a plaintiff's mark. *See Agri-Supply*, 457 F. Supp. 2d at 663. Moreover, in the context of domain names, the mere presence of a top-level domain—such as ".COM"—"does not itself have source-identifying significance." *Booking.com B.V. v. U.S. Patent & Trademark Office*, 915

F.3d 171, 185 (4th Cir. 2019), *as amended* (Feb. 27, 2019), *aff'd*, 140 S. Ct. 2298 (2020) (citations omitted).

Here, this standard is easily met. Defendant Domain Name gibill.com add only ".com" Plaintiff's GI Bill mark. As discussed above, these additions are irrelevant in determining whether a domain name is identical or confusingly similar to a mark. Therefore, Plaintiff's mark and Defendant Domain Name are identical for purposes of the ACPA.

3.  Registrant's Bad Faith.

Lastly, the undersigned finds that the current registrant of Defendant Domain Name acted in bad faith. Relevant factors for this determination include: (1) the registrant's intellectual property rights in the domain name; (2) the extent to which the domain name consists of the registrant's legal name; (3) the registrant's bona fide noncommercial or fair use of the mark in a website accessible under the domain name; (4) the registrant's intent to divert consumers from the mark owner's website for commercial gain and in such a way that could harm the goodwill of the mark by creating a likelihood of confusion as to the source of the website; and (5) the registrant's provision of misleading or false contact information when applying for registration of the domain name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I)-(II), (IV)-(V), (VII). Courts may use these factors as a guide but are not required to exhaustively consider them. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005).

Here, there are several indications of the current registrant's bad faith. First, Defendant Domain Name does not reflect the registrant's intellectual property rights. (Compl. ¶ 20; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(I).) Second, Defendant Domain Name does not reflect the current registrant's legal name, or any other name used to identify the registrant. (Compl. ¶¶ 20-22; *see also* 15 U.S.C. § 1125(d)(1)(B)(II).) Third, the registrant of Defendant Domain Name has not

engaged in any bona fide offering of goods or services under the mark. (Compl. ¶ 23; Mot. Default J. at 10; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(IV).) Fourth, the registrant of Defendant Domain Names have indicated an intent to (1) divert consumers away from Plaintiff's legitimate online locations and (2) profit from that diversion by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendant Domain Name through its use of the domain names. (Compl. ¶ 25; Mot. Default J. at 10; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(V).) Finally, the current registrant of Defendant Domain Name supplied material and misleading contact information when registering the domain names, which supports a finding of bad faith. (Compl. ¶¶ 26-27; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(VII).) Upon review of the relevant factors and underlying facts, the undersigned concludes that the registrant of Defendant Domain Name acted in bad faith.

### B.     Conclusion

Plaintiff has satisfied the ACPA's procedural provisions and is entitled to relief under 15 U.S.C. § 1125(d). As a result, the undersigned finds that the Court may order the forfeiture or cancellation of Defendant Domain Name, or transfer ownership of Defendant Domain Name to Plaintiff. *See* 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i).

### IV.     REQUESTED RELIEF

Plaintiff requests that the Court (1) enter default judgment against Defendant Domain Name on Count I of Plaintiff's Complaint; and (2) direct VeriSign, Inc. to transfer each of Defendant Domain Name to Plaintiff. The undersigned will consider each form of requested relief in turn.

### A. Entering Default Judgment on Count 1

The undersigned found above that Plaintiff pled a claim upon which relief can be granted under the ACPA (Count I). As a result, the undersigned recommends granting Plaintiff's motion for default judgment, thereby entering default judgment in favor of Plaintiff and against Defendant Domain Name on Count I of Plaintiff's Complaint.

### B. Transfer of Defendant Domain Names to Plaintiff

As a remedy in *in rem* proceedings against a domain name, a court may order the transfer of the domain name to the owner of the mark. 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i). Here, the domain name registry for Defendant Domain Name is maintained by VeriSign, Inc., which is located in this Court's judicial district. (Compl. ¶ 8.) As such, upon entry of default judgment against Defendant Domain Name on Count I, the Court may order the registry to transfer ownership of Defendant Domain Name to Plaintiff. Because Plaintiff has pled a claim upon which relief can be granted under the ACPA and satisfied the procedural and jurisdictional requirements, the undersigned recommends that the Court transfer ownership of Defendant Domain Name to Plaintiff upon entering default judgment.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends that this Court (1) grant Plaintiff's motion for default judgment (Dkt. 10), thereby entering default judgment against Defendant Domain Name and in favor of Plaintiff on Count I of Plaintiff's Verified Complaint; and (2) direct VeriSign, Inc. to transfer Defendant Domain Name gibill.com to Plaintiff, per Plaintiff's instructions.

VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/<br>
THERESA CARROLL BUCHANAN<br>
UNITED STATES MAGISTRATE JUDGE

October 18, 2021
Alexandria, Virginia